# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JERIEL EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-347-SPS |
| | ) | |
| STEVEN HARMON, BOBBY LEE, | ) | |
| GREG FOREMAN, and DILLON | ) | |
| SWAIM, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case arises out of an encounter between Jeriel Edwards and police officers with the City of Muskogee Police Department. The Plaintiff sued a number of individuals and entities, including the remaining four Defendants in the case: Steven Harmon, Bobby Lee, Greg Foreman, and Dillon Swaim. The claims against these Defendants are made pursuant to 42 U.S.C. § 1983, and the Defendants have filed a summary judgment motion asserting qualified immunity. For the reasons set forth below, the Court finds that Defendants Steve Harmon, Bobby Lee, Greg Foreman and Dillon Swaim's Brief in Support of their Motion for Summary Judgment [Docket No. 54] should be GRANTED.

## I. Procedural History

On October 23, 2018, the Plaintiff filed the present case in this Court. In his Second Amended Complaint, Plaintiff alleged two causes of action against the various Defendants,

but only the first implicates these four defendants.[1]  The Plaintiff's First Cause of Action is raised pursuant to 42 U.S.C. § 1983 as to all four Defendants, alleging unconstitutional use of excessive and unreasonable force.

## II. Law Applicable

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]"  Fed. R. Civ. P. 56(c).

## III. Factual Background

The undisputed facts reflect that on October 25, 2016, City of Muskogee Police Officer Greg Foreman was flagged down by a citizen who asked him to check out a vehicle in the driveway behind a Wendy's restaurant in Muskogee, Oklahoma.  Defendant

---

[1] The Plaintiff's Second Cause of Action, arising under the Oklahoma Constitution as to the Defendant City of Muskogee, was previously dismissed.  *See* Docket Nos. 33, 45.

Foreman pulled into the restaurant parking lot, located the vehicle in the driveway behind the restaurant, and got out of his patrol car to approach the vehicle. Defendant Foreman believed that Mr. Edwards was under the influence of alcohol, drugs, or both, and that it was likely PCP. Video footage of the encounter from Defendant Foreman's body camera reflects that when Defendant Foreman approached the vehicle, he asked Mr. Edwards several questions that produced no response, prompting Defendant Foreman to ask, "Can you talk?" Starting at the 2:43 mark on the video, Defendant Foreman instructed Mr. Edwards to put his car in park at least four times before he complied, also once asking how much he had had to smoke, while Mr. Edwards repeatedly moved his hands in and out of his pockets. Defendant Foreman asked Mr. Edwards for identification, but it was not until the 3:54 mark that Mr. Edwards was able to retrieve his wallet from his pocket. The parties agree that Mr. Edwards seemed confused, had trouble understanding what was happening, and kept putting his hands in his pockets. For nearly a minute after retrieving his wallet, Defendant Foreman instructed Mr. Edwards to keep his hands out of his pockets and put his wallet down on the console of his car before he complied. The Plaintiff nonetheless asserts that Mr. Edwards responded immediately to all attempts to engage and obeyed all commands. Defendant Foreman, believing Mr. Edwards to be under the influence of PCP, thought it best to remove Mr. Edwards from the car and place him under arrest and in handcuffs.

As Mr. Edwards was getting out of the vehicle, Defendant Foreman instructed Mr. Edwards to turn around and put his hands behind his back. Defendant Harmon arrived around this time and also began instructing Mr. Edwards to comply with Defendant

Foreman's instructions to put his hands behind his back. Defendants asserts that Mr. Edwards did not comply with this instruction, while Mr. Edwards contends that the officers prevented him from complying. Defendant Foreman then reached for Mr. Edwards's right hand to attempt to handcuff him, and also radioed for help with Mr. Edwards. Defendant Harmon then pushed Mr. Edwards back into the space between the car door and the car, and Defendant Foreman ordered Mr. Edwards to get on the ground, a safety tactic officers use to subdue a suspect actively resisting arrest. Defendants Harmon and Foreman then forced Mr. Edwards to the ground, which Plaintiff asserts they did without waiting for Mr. Edwards to comply.

Over the next four minutes, officers attempted to handcuff Mr. Edwards. On the video, officers can repeatedly be heard instructing him to put his hands behind his back while they struggled and appeared to be grappling with the Plaintiff's hands and arms, and Mr. Edwards can be heard asking, "Why are you punching me, sir?" During this time, it is undisputed that Defendant Harmon delivered three punches to Mr. Edwards's ribs, a technique taught for use when a subject is resisting being handcuffed. Footage is grainy and not clearly trained on Mr. Edwards as Defendants Foreman and Harmon struggled with Mr. Edwards. Defendants assert that they could not control Mr. Edwards's hands and arms and that he was extremely strong, but Mr. Edwards contends that they *did* have control of his hands and arms and were preventing him from complying with their commands.

During the struggle, Defendant Foreman smelled an odor he associated with persons under the influence of PCP, and Plaintiff does not dispute his knowledge that such substance could cause suspects to fight officers and be at a higher risk of excited delirium,

which could result in death.  At the 6:24 mark on the body cam footage, Defendant Foreman deployed his Taser in an effort to get Mr. Edwards into custody.  Defendant Foreman first deployed the Taser into Mr. Edwards's back then immediately moved the connecting wires to his calf to obtain neuromuscular incapacitation, a technique referred to as "stapling." Defendants assert the Taser had no effect on Mr. Edwards, while he contends that it had a "debilitating" effect on him and that he never resisted arrest.  After deploying the Taser, the video shows Mr. Edwards attempting to sit up on his right side, with his right arm propping him up and his left arm stretched in front of him.  Defendant Foreman again instructed Mr. Edwards to put his hands behind his back, and Mr. Edwards responded that they were, although they were not.  Around the 6:45 minute mark, Mr. Edwards appeared to attempt to stand up, and what followed was a struggle among all parties on the video. Another officer appears on the video at the 7:09 mark to assist Defendants Foreman and Harmon, and Mr. Edwards shortly thereafter can be seen in a partially seated position near his vehicle while officers continued to attempt to get him in handcuffs and instruct him to stop resisting.  He can be heard stating, "I'm not resisting," and "Let go of me."

Shortly after the 8:00 mark on the video, Defendant Lee began applying a lateral vascular neck restraint to Mr. Edwards, although Plaintiff asserts it was not properly applied and that Defendant Lee did so immediately upon his arrival and without reason.  A number of officers seem to have arrived within this time frame, as the Plaintiff is surrounded by them at this point.  At the 8:23 mark, officers were then able to get the first handcuff on Mr. Edwards's right arm.  The neck restraint was discontinued as officers attempted to move Mr. Edwards to a facedown position and attach the second handcuff.

Video footage is unsteady but shows at least six officers attempting to attach the second handcuff to his left arm, which is done at the 9:03 mark. Defendant Swaim had arrived during this time and assisted in placing the second handcuff; he also later removed the Taser prongs from Mr. Edwards's back. At the 9:10 mark an officer announces that Mr. Edwards has been handcuffed. The officers surrounding Mr. Edwards then stepped away, and Mr. Edwards can be seen lying partially face down, with more weight on his left side, while one officer keeps hands on his right arm and back. Another officer then places a knee over Mr. Edwards's right shoulder while all the officers discuss calling EMS for Mr. Edwards. Defendants assert, and Plaintiff does not dispute, that after he was secured by the handcuffs no additional force was used on him. This means that all allegations of excessive force apply to the time period prior to the handcuffs being secured on Mr. Edwards.

Following the incident, Mr. Edwards was charged in Muskogee County District Court in Case No. CF-2016-1198 with: (i) DUI Drugs – felony, (ii) possession of a controlled dangerous substance (PCP) – felony, (iii) resisting an officer – misdemeanor, and (iv) possession of a controlled dangerous substance (Xanax) – felony. *See* Docket No. 54, Ex. 10, p. 3-4. The form on which Mr. Edwards entered a plea is a form for entering a plea of guilty, but the word "guilty" is stricken out and the word "no contest" was handwritten as to the heading and all questions concerning the type of plea he was entering. *Id.* at p. 16-21. The Judge signed a document which states that "The Defendant's plea(s) of <u>no contest</u> is/are knowingly and voluntarily entered and accepted by the Court," where "no contest" was handwritten. *Id.* at 23. The notice of the right to appeal likewise has the

word "guilty" stricken and interlineated with "no contest." *Id.* at p. 26. However, the Judgement *and* Amended Judgment and Sentence state, in all caps with no interlineation, that Mr. Edwards entered a plea of guilty. *Id.* at 32-33.

## Analysis

The Defendants have all moved for summary judgment, asserting that Mr. Edwards is barred by collateral estoppel from bringing his Fourth Amendment claim because he pleaded guilty to resisting arrest, and therefore excessive force is not possible. Alternatively, they contend they are each entitled to qualified immunity. The Plaintiff challenges all these arguments, first contending that he actually pleaded "no contest," and that his plea is not a bar to the Fourth Amendment claim. Furthermore, he contends that the Defendants are not entitled to qualified immunity because they engaged in unconstitutional and excessive force in violation of clearly established law. For the reasons set forth below, the Court finds that the Defendants Harmon, Lee, Foreman, and Swaim are entitled to qualified immunity.

## A. Collateral Estoppel.

The Court first addresses the Defendants' argument that Mr. Edwards is precluded from asserting a Fourth Amendment claim at all because he pleaded guilty to resisting arrest. Under Oklahoma law, "[t]he doctrine of collateral estoppel, or issue preclusion, is activated when an ultimate issue has been determined by a valid and final judgment – that question cannot be relitigated by parties, or their privies, to the prior adjudication in any future lawsuit." *Carris v. John R. Thomas and Associates, P.C.*, 1995 OK 33, ¶ 9, 896 P.2d

522, 527.  Defendants argue that because the Plaintiff has been found guilty of resisting arrest in this incident, his resistance supports the amount of force used to arrest him.

The Plaintiff contends that he did not plead guilty, but rather pleaded "nolo contendere," or "no contest."  Defendants respond that because the Judgment and Amended Judgment "clearly stated" that the Plaintiff pleaded guilty, his plea could not possibly have been "no contest," and any case law regarding "no contest" pleas is therefore irrelevant. Regardless of whether the Plaintiff pleaded guilty to resisting arrest or pleaded "no contest," however, the Court finds that such conviction is not determinative as to his Fourth Amendment claim.  First, the factual issues in the present case are not identical to the fact issues presented in the Plaintiff's criminal case, and the doctrine of collateral estoppel is therefore not implicated.  *See Rome v. Romero*, 2006 WL 322589, at *6 (D. Colo. Feb. 10, 2006) ("The § 1983 claim here concerns whether the Defendants actually used excessive force, rather than Rome's belief about lawfulness of the arrest or the force used. Because the factual issues in the criminal case and in this case are not identical the doctrine of collateral estoppel does not apply. Thus, the doctrine of collateral estoppel does not entitle Defendants to summary judgment on Rome's excessive force claim.").

Second, a conviction for resisting arrest can coexist with an officers' use of excessive force.  In *Perea v. Baca*, the Tenth Circuit found that Mr. Perea's resistance to arrest "did not justify the officers' severe response," holding that "[a]lthough use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not."  817 F.3d 1198, 1203 (10th Cir. 2016).  "*Perea* therefore puts the Defendant Officers on notice that . . . the force used should be no more than is

-8-

necessary to subdue the suspect." *Coronado v. Olsen*, 2019 WL 652350, at *6 (D. Utah Feb. 15, 2019). *See also Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999) ("Thus, whether Martinez resisted arrest by failing to heed instructions and closing his vehicle's window on the officer's arm is likewise a question separate and distinct from whether the police officers exercised excessive or unreasonable force in effectuating his arrest. The state court's finding that Martinez resisted a lawful arrest[] may coexist with a finding that the police officers used excessive force to subdue him. In other words, a jury could find that the police officers effectuated a lawful arrest of Martinez in an unlawful manner.") (internal citations omitted); *Riggs v. City of Wichita, Kan.*, 2013 WL 978713, at *3 (D. Kan. Mar. 12, 2013) ("Plaintiff does not challenge the lawfulness of her arrest and conviction, but rather challenges Defendant's use of excessive force in effectuating her arrest. Thus, Plaintiff's previous resisting arrest conviction does not necessarily foreclose an excessive force claim here."). *Cf. Strepka v. Jonsgaard*, 2010 WL 4932723, at *7 (D. Colo. Nov. 8, 2010) ("Again, because a finding in this suit that Defendant Jonsgaard used excessive force would not invalidate the conviction, Plaintiff's excessive force claim is not barred by *Heck*."). Therefore, the Plaintiff's First Cause of Action is not barred by the doctrine of collateral estoppel.

### B. Plaintiff's Plea in the Prior Criminal Case

Even if the Plaintiff's conviction for resisting arrest does not bar his claim under the Fourth Amendment, it raises the question of what effect it has on the analysis of the case, at both the summary judgment and trial stages. The Court is not prohibited from looking behind the Judgment to determine the nature of the plea. *See, e. g.*, *Bland v. State*, 2000

OK CR 11, ¶ 88, 4 P.3d 702, 726 ("Appellant asserts that as the jury found him guilty of malice aforethought murder, the reference to felony murder [on the Judgment] was a scrivener's error which should be corrected. The State does not dispute this claim. A review of the record supports Appellant's contentions. Therefore, the trial court is ordered to correct the judgment and sentence to reflect the jury's verdict by striking the reference to a conviction for felony murder."). Here, every document aside from the Judgment and Amended Judgment related to the Plaintiff's plea indicates that it was a "no contest plea," including Court findings signed by the Judge and dated December 5, 2016, which required him to handwrite the type of plea being entered [Docket No. 54, Ex. 10, p. 23]. The Court thus finds that the Plaintiff pleaded no contest to, *inter alia*, resisting arrest, a misdemeanor.

Under Oklahoma law, the "legal effect" of a nolo contendere plea "shall be the same as that of a plea of guilty, but the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." 22 Okla. Stat. § 513. *See also Martin v. Phillips*, 2018 OK 56, ¶ 6, 422 P.3d 143, 146. Likewise, Fed. R. Evid. 410 states, "In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in plea discussions: [](2) a nolo contendere plea[.]" The Tenth Circuit has held that "although a plea of nolo contendere has the same *legal* effect as a guilty plea, it is not a *factual* admission to the underlying crime." *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000) (emphasis in original).

However, in *Rose*, the Tenth Circuit went on to state that the rules holding nolo contendere pleas to be inadmissible "assume a situation in which the criminal defendant is

*being sued* later in a civil action, and the plea is offered as proof of guilt." *Id.* The Sixth Circuit found "a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission which would preclude liability. Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil *liability*." *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (emphasis in original). The Sixth Circuit thus "decline[d] to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police." *Id.* The Oklahoma Court of Criminal Appeals in 1992 found Fed. R. Evid. 410 and 12 Okla. Stat. § 2410 "virtually identical," and stated, "We agree with, and adopt, the reasoning of the Sixth Circuit Court in the *Walker* case." *Irwin v. SWO Acquisition Corp.*, 1992 OK CIV APP 48, ¶¶ 10-11, 830 P.2d 587, 590. This holding was reiterated in *Delong v. State ex rel. Oklahoma Dept. of Public Safety*, 1998 OK CIV APP 32, ¶¶ 6-7, 956 P.2d 937, 938-939 ("We are likewise persuaded by the *Walker* analysis as the proper analysis to be employed in our case. Under that rationale, Delong's *nolo contendere* pleas to the charges of resisting arrest and attempted escape from detention are admissible defensively, and admit the validity of those charges, thus likewise establishing probable cause for the arrest on those charges, and waiving any irregularities in the criminal proceedings including lack of probable cause."). *But see Delong*, 1998 OK CIV APP 32, ¶ 8 (Hansen, Carol, J., dissenting) ("Because § 2410 is clearly unambiguous, the requisite plain language reading can lead to no other conclusion than that § 2410

precludes admission of evidence of a *nolo contendere* plea for any purpose, even when the one entering the plea is the plaintiff in a later civil action. The majority erroneously interprets § 2410 to give it a meaning which is in conflict with what the statute clearly dictates.").

In light of the aforementioned case law, the Tenth Circuit has stated that "[t]here is a proscription on the use of nolo contendere pleas in subsequent civil proceedings, but it applies only to ''offensive' use . . . to establish the criminal defendant's subsequent potential civil liability, *not* to . . . 'defensive' use . . . in a case where the criminal defendant [has] sought to recover damages for an alleged unlawful arrest.'" *Jackson v. Loftis*, 189 Fed. Appx. 775, 779 (10th Cir. 2006). *Cf. Sharif v. Picone*, 740 F.3d 263, 270 (3d Cir. 2014) ("Regardless of whether he engaged in assaultive conduct, Sharif remains free to contend that the reaction of the corrections officers was such that it constituted excessive force in comparison to the threat he posed. . . . Given these considerations, we hold that Rule 410 barred the admission of Sharif's plea of nolo contendere [to aggravated assault]. . . . Sharif's claim that he did nothing wrong was not inconsistent with his previous plea of nolo contendere, and, thus, would not be relevant in assessing his character for truthfulness.").

Accordingly, "Plaintiff's conviction [by way of a nolo contendere plea] for resisting arrest will be relevant to the determination of whether Defendant used excessive force to effectuate h[is] arrest." *Riggs v. City of Wichita, Kan.*, 2013 WL 978713, at *3 (March 12, 2013). The Court thus finds that the Plaintiff's conviction for resisting arrest, by way of a

no contest plea, is relevant and admissible under both Tenth Circuit and Oklahoma law to determining whether the Defendants used excessive force, although it is not determinative.

## C. Qualified Immunity.

The Court now turns to the Defendants' contention that they are entitled to qualified immunity here. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Additional steps are taken when a summary judgment motion raises a defense of qualified immunity." *Cunningham v. New Mexico*, 2014 WL 12791236, at *4 (D. N.M. May 12, 2014), *citing Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right *and* (2) the constitutional right was clearly established. The court may consider either of these prongs before the other 'in light of the circumstances in the particular case at hand.'" *Cunningham v. New Mexico*, 2014 WL 12791236, at *4 (D. N.M. May 2, 2014) (emphasis added), *quoting Pearson*, 555 U.S. at 236. "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, _ U.S. _, 137 S. Ct. 548, 551 (2017), *quoting Mullenix v. Luna*, _ U.S. _, 136 S. Ct. 305, 308 (2015). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."

-13-

*Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013) (internal quotation marks omitted).

It is also important to note that "[p]laintiffs must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations.  They must identify specific actions take by particular defendants[] that violated their clearly established constitutional rights." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (internal citations omitted).  *See also Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("§ 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.").  In other words, "the complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018), *quoting Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).  The exception to this, though, is sometimes found at the summary judgment stage of excessive force cases where there is active and joint participation in the use of force.[2]  *See Estate of Booker v. Gomez*, 745 F.3d 405, 421 (10th Cir. 2014)

_____

[2] The Tenth Circuit also noted in *Estate of Booker v. Gomez* that "failure to conduct an individualized analysis is [also] not reversible error" where an individual's actions do not constitute excessive force but the "deputy could be liable under a failure-to-intervene theory." 745 F.3d 405, 421-422 (10th Cir. 2014).  However, the Plaintiff has neither alleged in the Complaint that officers failed to intervene nor argued on the basis of this in his Response, and the Court will therefore not consider this alternative to the active and joint participation of the four named Defendants.  *Lynch v. Board of Cty. Commissioners of Muskogee County, Oklahoma*, 2019 WL 4233382, at *5 (10th Cir. Sept. 6, 2019) ("A plaintiff does not have to separately plead a failure to intervene cause of action, but the pleadings must make clear the grounds on which the plaintiff is entitled to relief.  Here, the pleadings did not make clear that the appellants are entitled to relief on a failure to intervene theory.") (internal quotations omitted).

("Although we frequently conduct separate qualified immunity analyses for different defendants, we have not always done so at the summary judgment stage of excessive force cases. Where appropriate, we have aggregated officer conduct.") (collecting cases). This is generally seen where the Defendants appear to have engaged in a "group effort." *See, e. g.*, *Stout v. United States*, 2016 WL 4130231, at *2 (W.D. Okla. Aug. 2, 2016) ("Given that all of the individual Defendants are alleged to have fired into the car, it is not necessary to determine which of the officers fired the shot that resulted in Stout's death."). *See also Estate of Booker*, 745 F.3d at 422 ("Because the Defendants here engaged in a group effort, a reasonable jury could find them liable for an underlying finding of excessive force."). But an aggregate analysis is not required. *See Lynch v. Board of County Commissioners of Muskogee County, Oklahoma*, 2019 WL 4233382, at *4 n.3 (10th Cir. Sept. 6, 2019) ("Because we address each officer separately, we need not opine as to whether group-analysis would have been appropriate."). It thus appears that group analysis is often accompanied by either an indivisible activity such as all officers firing weapons at the same time (as discussed in *Stout*, above), or when each officer's active participation is nevertheless also made part of the analysis. *See Moore v. Stadium Management Company, LLC*, 2016 WL 879829, at *8 (D. Colo. March 8, 2016) (citing to *Estate of Booker* and noting that, "in finding that aggregating the conduct of multiple officers was appropriate, the Tenth Circuit's decision cited evidence of each officer's active participation in the challenged use of force.").

Here, Defendants assert in their Reply that Plaintiff has failed the requirement of *Pahls* to "make clear exactly *who* is alleged to have done *what to whom*, . . . as distinguished

from collective allegations." 718 F.3d at 1225 (quotation omitted) (emphasis in original). The undisputed facts reflect that Defendant Harmon delivered three punches to the Plaintiff's ribs, Defendant Foreman deployed the Taser on the Plaintiff, Defendant Lee employed the lateral vascular neck restraint on the Plaintiff, and Defendant Swaim helped to place the second handcuff on the Plaintiff. The Plaintiff refers to the chokehold, the Taser, and an unnamed officer or officers who placed a knee on his back to subdue him as applications of excessive force. It thus appears that there are facts supporting a coordinated use of force as to Defendants Harmon, Foreman, and Lee, but perhaps not as to Defendant Swaim. However, since it was a "group effort," including Defendant Swaim, it is possible a reasonable jury could find all of them, including Defendant Swaim, liable for any finding of excessive force. The Court finds, for the reasons set forth below, that the officers are entitled to qualified immunity under either analysis.

"To state an excessive force claim 'under the Fourth Amendment, plaintiffs must show *both* that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (emphasis in original), *quoting Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000). "[A] 'seizure' requires restraint of one's freedom of movement and includes apprehension or capture by deadly force." *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010). The parties do not challenge that a seizure occurred, as the Defendants were in the process of arresting the Plaintiff. It remains, however, for the Plaintiff to demonstrate that the actions of each of these Defendants was unreasonable.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And it is an objective inquiry: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotations omitted). An officer does not have to use the least intrusive means, as long as his conduct was reasonable, which is based on the totality of the circumstances. *Thomas*, 607 F.3d at 670; *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Because it is based on the totality of circumstances of each case, "[r]easonableness" does not have a precise test but rather "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004), *quoting Saucier v. Katz*, 533 U.S. 194, 205 (2001). "[W]e are mindful: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010), *quoting Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009).

The Supreme Court in *Graham* set out several important factors, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. Also, "[t]he reasonableness of Defendants'

actions depends both on whether the officers were in danger at the *precise moment* that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) (emphasis added).  Finally, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

As to the first factor, the severity of the crime, the Court finds that it weighs slightly in favor of the Plaintiff.  He was being arrested for several drug-related felonies, and "[f]elonies are deemed more severe," *see Clark v. Bowcutt*, 675 Fed. Appx. 799, 807 (10th Cir. 2017), but "Defendants do not contend that any of [the Plaintiff's] alleged crimes were accompanied by violence." *Estate of Ronquillo by and through Estate of Sanchez v. City and County of Denver*, 720 Fed. Appx. 434, 438 (10th Cir. 2017) ("The officers were pursuing Mr. Ronquillo for arrest warrants related to aggravated vehicle theft.  However, as the district court noted, Defendants do not contend that any of Mr. Ronquillo's alleged crimes were accompanied by violence.  We thus weigh this factor in favor of the estate."). *Cf. Huntley v. City of Owasso*, 497 Fed. Appx. 826, 830 (10th Cir. 2012) ("Faced with a complaint of potentially *felonious domestic violence*, the officers find support from the first *Graham* factor.") (emphasis added).

The second factor—the immediacy of the harm—requires the closest analysis and "is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1216 (10th

Cir. 2017), *quoting Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). This factor is analyzed "at the precise moment that the officer used force." *Estate of Ronquillo*, 720 Fed. Appx. at 438. "The court conducts this analysis from the perspective of a reasonable officer on the scene, rather than with the vision of 20/20 hindsight, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Estate of Ronquillo by and through Estate of Sanchez v. City and County of Denver*, 2016 WL 10843787, at *3 (D. Colo. Nov. 17, 2016). Again, this analysis takes into account "the totality of circumstances." *Thomson v. Salt Lake City*, 584 F.3d 1304, 1319 (2009). Here, Defendants contend that noncompliant suspects under the influence of PCP are extremely dangerous and unpredictable, often possessing enhanced physical strength, endurance, and resistance to pain. Plaintiff contends instead that he was peaceful and cooperative, and that intoxicated persons pose a minimal threat, citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007), in which the Tenth Circuit found the immediacy of the harm was mitigated because although the Plaintiff was intoxicated, he had not resisted arrest and his demeanor was "benign" when an officer employed a "twist lock" on his arm. But *Novitsky* is distinguishable from this case. Although Plaintiff contends he always cooperated, he in fact pleaded no contest to resisting arrest. And the Plaintiff does not dispute that he was intoxicated, seemed confused, and had trouble understanding with and complying with Defendant Foreman's instructions. Such documented noncompliance bolsters the immediacy of the threat to the officers, as "intoxicated people are often unpredictable and inject uncertainty into interaction with law enforcement." *Ornelas v. Lovewell*, 2014 WL 1238014, at *2 (D. Kan. March 26, 2014). "The situation presented to [the officers] was

clearly a tense, uncertain, and rapidly evolving situation that we do not like to second-guess using the 20/20 hindsight found in the comfort of a judge's chambers." *Phillips v. James*, 422 F.3d 1075, 1084 (10th Cir. 2005). This factor therefore weighs in favor of the Defendants.

The third factor, whether the Plaintiff was resisting arrest, goes along with the second factor and also weighs more in the Defendants' favor. In light of the fact of the Plaintiff's resistance to arrest, the officers who attempted to arrest the Plaintiff were justified in some use of force in arresting the Plaintiff. As stated above, the evidence reflects that the Plaintiff pleaded no contest to resisting arrest in violation of 21 Okla. Stat. § 268, which provides that it is a misdemeanor to "knowingly resist[], by the use of force or violence, any executive officer in the performance of his duty." Additionally, the Affidavit signed by Defendant Foreman as part of the arrest record states that the Plaintiff "resisted arrest and had [controlled dangerous substance] in his vehicle." *See* Docket No. 54, Ex. 10, p. 7. As discussed above, in this Circuit the Plaintiff is not entitled to use his no contest plea to recover damages. *See Jackson*, 189 Fed. Appx. at 779 ("There is a proscription on the use of nolo contendere pleas in subsequent civil proceedings, but [] *not* to . . . 'defensive' use . . . in a case where the criminal defendant [has] sought to recover damages for an alleged unlawful arrest.'"). The Court notes that the Plaintiff challenges the Defendants' interpretation of the events in the body camera video, but he does not challenge that he pleaded "no contest" to resisting arrest, and such fact is admissible under these circumstances. The remaining question, of course, is how much force was justified.

The facts reflect that Defendant Foreman and Defendant Harmon attempted to handcuff the Plaintiff but were unsuccessful and took him to the ground. It is not clear from the video or the briefing, but this may also be the point where Plaintiff refers to the full force of an officer on his prone body. Defendant Harmon first delivered three blows to the Plaintiff's ribs in an effort to get him to comply with the arrest, and these two officers grappled with the Plaintiff in order to get his hands behind his back. Defendant Foreman then employed the Taser in the "stapling" method, but officers were still unable to handcuff the Plaintiff. While the use of a Taser can be excessive under certain circumstances, *see Estate of Booker*, 745 F.3d at 424-425 ("Under prevailing Tenth Circuit authority, it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance.") (internal quotation omitted), the use of a Taser is not per se objectively unreasonable when a subject is not clearly under an officer's control. *See Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) ("Even if Perea initially posed a threat to officers that justified tasering him, the justification disappeared when Perea was under the officers' control."). Then as more officers arrived to assist, Defendant Lee applied the neck restraint which allowed the officers to get the first handcuff on the Plaintiff, and then get him back facedown again to get the second handcuff attached. Once the second handcuff was attached, all but one of the officers backed away from the Plaintiff within seconds, and it is undisputed that there was no additional force after the handcuffs were secured. Based on the totality of the circumstances here, the Court therefore finds that the actions of each officer, individually and collectively, were objectively reasonable.

But even assuming *arguendo* that the officers' actions were objectively unreasonable, the Plaintiff must also establish that Defendants' actions violated a clearly established constitutional right. "Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct 'by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as he maintains.'" *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016), *quoting Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). However, "'clearly established law' should not be defined 'at a high level of generality.'" *Pauly*, 137 S. Ct. at 552, *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, it "must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*, *quoting Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987). Therefore, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015) (emphasis in original).

Although the Plaintiff has advocated for a "sliding-scale" approach measuring degrees of egregiousness, *see Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("[B]ecause excessive force jurisprudence requires and all-things-considered inquiry with careful attention to the fact and circumstances of each particular case . . . [w]e have therefore adopted a sliding scale to determine when law is clearly established."), the Tenth Circuit has noted that such scale has come into question and "may arguably conflict with recent Supreme Court precedent on qualified immunity" because it "may allow us to

find a clearly established right even when a precedent is neither on point nor obviously applicable." *Lowe v. Raemisch*, 864 F.3d 1205, 1211 n.10 (10th Cir. 2017).

The Plaintiff also points to *Estate of Booker* as to clearly established law, arguing that because that case involved the use of a choke hold, pressure on the back of an arrestee, and a taser, the Defendants here were on notice that "use of such force on a person who is not resisting and who is restrained in handcuffs is disproportionate." 745 F.3d at 428-429. But here, none of those actions occurred while the Defendant was in handcuffs, and the Defendant *was* resisting. Moreover, the choke hold in this case occurred while the Plaintiff was sitting up, while in *Estate of Booker* the Plaintiff was face down with an officer on top of him while the restraint was applied.

Finally, the Plaintiff points to *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008), a case involving positional asphyxiation where "Mr. Weigel was fully restrained and posed no danger, [but] the defendants continued to use pressure on a vulnerable person's upper torso while he was lying on his stomach." 544 F.3d at 1154. The Tenth Circuit held there that "the law was clearly established that applying pressure to Mr. Weigel's upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions." *Id.* at 1155. Such facts are clearly distinguishable from this case, where those techniques were applied only until the Plaintiff was placed in restraints. *See McCoy v. Meyers*, 887 F.3d 1035, 1048 (10th Cir. 2018) ("[T]he preexisting precedent would not have made it clear to every reasonable officer that striking Mr. McCoy and applying a carotid restraint on him [before he was subdued] violated his Fourth Amendment rights. The cases cited by Mr. McCoy—

*Dixon* [*v. Richer*, 922 F.2d 1456 (10th Cir. 1991)], *Casey*, and *Weigel*—involved force used on individuals who either did not pose a threat to begin with or were subdued and thus no longer posed any threat."). *See also Waters v. Coleman*, 632 Fed. Appx. 431, 437 (10th Cir. 2015) ("The key fact here is that while Officer Jones was applying force, Mr. Ashley was resisting being taken into custody. In several cases decided before 2011, this court upheld use of force by officers who faced physical resistance, including against persons who were impaired. Further, the pre-2011 cases holding that force may be excessive tend to emphasize a detainee's *lack* of resistance.") (emphasis in original) (collecting cases).

The Court thus concludes that it is not clearly established that any of the Defendants violated the Constitutional rights of the Plaintiff. Because he has failed to carry his burden of establishing a violation of his constitutional rights, and because the law is not clearly established that the Defendants' actions violated the law, Defendants Harmon, Foreman, Lee, and Swaim are granted qualified immunity on Plaintiff's claim under 42 U.S.C. § 1983.

## CONCLUSION

In summary, the Defendants Steve Harmon, Bobby Lee, Greg Foreman and Dillon Swaim's Brief in Support of their Motion for Summary Judgment [Docket No. 54] is hereby GRANTED.

DATED this 16th day of December, 2019.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma

-24-